UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

GLASGOW EQUIPMENT SERVICE, INC.         Chapter 11

    Debtor.                                    Case No. 18-11712-PGH

_____/

# GREAT AMERICAN INSURANCE COMPANY'S
# MOTION TO LIFT STAY

## NEGATIVE NOTICE

**Any interested party who fails to file and serve a written response to this motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1(C), be deemed to have consented to the entry of an order granting the relief requested in the motion.**

GREAT AMERICAN INSURANCE COMPANY ("GAIC"), through undersigned counsel, pursuant to 11 U.S.C. § 362(d) and 11 U.S.C. § 105, moves this Honorable Court for an Order modifying the automatic stay in the captioned bankruptcy to permit GAIC: (1) collect Bonded Contract Funds on a project where the Debtor, Glasgow Equipment Service, LLC (the "Debtor") served as a subcontractor to Archer Western Contractors, Ltd. ("AWC") (the "AWC Bonded Subcontract Funds") for performance of certain work on a project referred to as the Picayune Miller Pump Station Project (the "AWC Subcontract") and was default terminated by AWC pre-petition; and (2) to utilize said AWC Bonded Contract Funds to pay claims under the payment and performance

bonds issued by GAIC on behalf of the Debtor, including costs incurred in completing the AWC Bonded Subcontract. In support of this motion, GAIC states:

## JURISDICTION

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. This matter is a "core" proceeding pursuant to 28 U.S.C. Section 157(b)(2).

## BACKGROUND

2. On February 14, 2018, the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code.

3. At all material times, the Debtor was engaged in commercial construction.

4. GAIC is a surety company which issues payment and performance bonds and stands as surety for selected contractors.

5. As a commercial contractor and/or subcontractor, from time to time, the Debtor required payment and performance bonds.

6. In order to induce GAIC to issue payment and performance bonds on behalf of the Debtor, the Debtor and others executed an Agreement of Indemnity ("Indemnity Agreement") dated January 13, 2011, in favor of GAIC. A copy of the Indemnity Agreement is attached as Tab "1" to the Affidavit of Edward Dudley, attached as **Exhibit "A."**

7. The execution of the Indemnity Agreement and the Debtor's undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to GAIC issuing any bonds naming the Debtor as a principal.

8. The Debtor entered into multiple contracts for which it required payment and performance bonds, including the following contracts (sometimes collectively referred to as the "Subcontracts"):

    a. Subcontract with Archer Western Contractors, Ltd. ("AWC") (the "AWC Subcontract") for performance of certain work on a project referred to as the Picayune Miller Pump Station Project (the "AWC Project");

    b. Subcontract with M.J Harris Construction Services, LLC, for the performance of certain work on a project referred to as the Delray Medical Center Patient Tower & Parking Garage Addition (the "Delray Project"); and

    c. Subcontract with Eco Building Solutions, Inc., for the performance of certain work on a project referred to as Pier 66 Fuel System Reconstruction (the "Pier 66 Project").

The above listed projects are sometimes collectively referred to as the "Bonded Projects."

9. At the Debtor's request, and in consideration for the Debtor's and others' promises to comply with the various terms of the Indemnity Agreement, GAIC agreed to issue the following bonds (collectively the "Bonds"):

    a. A Subcontractor Labor and Material Payment Bond and a Subcontractor Performance Bond (the "AWC Bonds") naming AWC as obligee and the Debtor as principal in connection with the Debtor's Subcontract on the AWC Project.

    b. A Subcontractor Labor and Material Payment Bond and a Subcontractor Performance Bond (the "Delray Bonds") naming M.J Harris Construction Services, LLC, as obligee and the Debtor as principal in connection with The Debtor's Subcontract on the Delray Project.

    c. A Subcontractor Labor and Material Payment Bond and a Subcontractor Performance Bond (the "Pier 66 Bonds") naming Eco Building Solutions, Inc., as obligee and the Debtor as principal in connection with The Debtor's Subcontract on the Pier 66 Project.

True and correct copies of the Bonds are attached as Tab "2" to the Affidavit of Mr. Dudley.

10. During the course of the AWC Project and pre-petition, AWC issued a declaration dated March 30, 2017, that the Debtor was in default under the Subcontract and demanded that GAIC perform under the AWC Performance Bond. A copy of AWC's

default letter is attached as Tab "3" to the Affidavit of Mr. Dudley. Further, the Debtor acknowledged to GAIC that it was financially unable to complete the work under the AWC Subcontract and to pay subcontractors, laborers and/or materialmen who provided labor and/or materials to the Debtor in connection with the AWC Subcontract and the AWC Project. At the Debtor's request and based on certain representations by the Debtor, including a reaffirmation by the Debtor and others of their obligations under the Indemnity Agreement, GAIC funded certain expenses on behalf of the Debtor through a direct payment to the Debtor.

11. GAIC also engaged a consulting firm, Forcon International Corp. ("Forcon"), to assist GAIC with its investigation of AWC's demand under the AWC Performance Bond including, but not limited to, determining the status of the work under the AWC Subcontract and options for completing the work under the AWC Subcontract.

12. By letter dated May 10, 2017, GAIC demanded that the Debtor and others post collateral security with GAIC, in accordance with the Indemnity Agreement, in the amount of $723,000.00, which represented, at the time, the expected costs associated with investigating and resolving claims under AWC Bonds, including estimated costs of completing the work under the Subcontract based on information known at the time by GAIC. A true and correct copy of the May 10, 2017 letter that GAIC sent to the Indemnitors demanding collateral is attached at Tab "4" to the Affidavit of Mr. Dudley.

The Debtor (and others obligated under the Indemnity Agreement) refused and/or failed to post collateral with GAIC in response to the May 10, 2017 letter.

13. GAIC's estimated loss thereafter increased based on additional claims made under the AWC Bonds since the collateral demand, notices of defective and/or non-conforming work by the Debtor from AWC, higher completion costs than initially anticipated, and alleged claims by AWC for delay damages. Accordingly, by letter dated August 14, 2017, GAIC demanded that the Debtor and others deposit unencumbered collateral acceptable to GAIC (cash or marketable securities) with GAIC in the amount of $1,000,000.00, which equals the amount GAIC deems necessary to protect itself from liability stemming from the AWC Bonds it issued on behalf of the Debtor. A true and correct copy of the August 14, 2017 letter that GAIC sent to the Indemnitors is attached as Tab "5" to the Affidavit of Mr. Dudley. The Debtor and others obligated under the Indemnity Agreement have refused and/or failed to post collateral with GAIC in response to the August 14, 2017 letter.

14. To date, GAIC has paid losses of $1,315,636.47 by reason of having issued the AWC Bonds, and those losses are continuing. *See* Affidavit of Mr. Dudley, attached as Exhibit "A." GAIC anticipates additional losses, deductions and offsets under the AWC Bonds. *Id.* While GAIC has not received any claims to date on the Delray Bonds and the Pier 66 Bonds, it is GAIC's understanding that these projects remain open and there is a possibility of future claims. Additionally, GAIC has incurred attorneys' and

-6-

consulting fees, costs, and expenses as a result of claims on the AWC Bonds, arranging for the completion of work under the AWC Subcontract, and in enforcing the Indemnitors' obligations under the Indemnity Agreement. *Id.*

15. According to the Debtor's schedules, Debtor claims an account receivable balance on the AWC Subcontract of $525,309.66, including retainage. Doc. 1, at p. 15. GAIC believes the Subcontract balance is actually $721,101.15, subject to adjustment for pending claims by AWC, as to which GAIC has reserved all rights, defenses and objections. *See* Affidavit of Mr. Dudley. In any event, GAIC's losses exceed the AWC Bonded Subcontract Funds.

16. The AWC Bonded Subcontract Funds are trust funds for payment of the costs of completing the work under the AWC Subcontract and payment of those supplying labor and materials used in the prosecution of work under the AWC Subcontract, and GAIC has a first priority right to the AWC Bonded Subcontract Funds under the Indemnity Agreement and principles of equitable subrogation. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36, 83 S.Ct. 232, 237 (1962); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989). The AWC Bonded Subcontract Funds serve to reduce the loss to GAIC in the event of the failure of the Debtor to perform under the AWC Subcontract.

17.     Further, the Indemnity Agreement provides, in pertinent part:

## ASSIGNMENT

THIRD: The Undersigned hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Undersigned to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retroactive to the date of the first Bond, but only in the event of (1) any abandonment, forfeiture or breach or alleged breach of any contracts referred to in the Bonds or of any breach or alleged breach of any Bonds; or (2) any breach or alleged breach of the provisions of any of the paragraphs of this Agreement; or (3) a default or alleged default in discharging such other indebtedness or liabilities when due; or (4) any assignment by the Undersigned for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Undersigned whether insolvent or not; or (5) any proceeding which deprives the Undersigned of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) the Undersigned's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Undersigned be an individual:

(a)     All the rights of the Undersigned in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds;

(b)     All the rights, title and interest of the Undersigned in and to all machinery, equipment, vehicles, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites:

(c) All the rights, title and interest of the Undersigned in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts;

(d) All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, laborers or materialmen, architects, engineers or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any party including, but not limited to, prime contractors, subcontractors, laborers, or materialmen;

(e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Undersigned has an interest;

(f) any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, furniture and fixtures, inventory, and general intangibles;

\* \* \*

## TRUST FUNDS

FOURTH: Undersigned covenant and agree that all funds received by them, or due or to become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. If the Surety discharges any such obligation, the Surety shall be entitled to assert the claims of any such party to the trust funds. The Undersigned shall, upon demand of the Surety and in

implementation of the trust, open an account or separate accounts with a bank designated by Surety, which account(s) shall be designated as a trust account(s) for the deposit of such trust funds and the Undersigned shall deposit therein all monies received pursuant to said contract. Withdrawals from such account(s) shall be by check or other instrument signed by the Undersigned and countersigned by a representative of the Surety. Notwithstanding anything to the contrary herein, this dedication may be implemented in any other manner provided at law or in equity.

18. Accordingly, the AWC Bonded Subcontract Funds are not property of the estate within the meaning of 11 U.S.C. § 541 as the Debtor was terminated under the AWC Subcontract pre-petition and took no action to challenge the termination in any judicial or arbitral forum. The Debtor further failed to pay subcontractors and/or suppliers for work performed in connection with the AWC Subcontract, causing GAIC to sustain losses under the AWC Bond, which losses are continuing and exceed the amount of the AWC Bonded Subcontract Funds. Therefore, the Debtor did not earn and is not entitled to the AWC Bonded Subcontract Funds, which are trust funds for the completion of the work and payment of the subcontractors and suppliers who provided labor and/or materials used in the performance of the work.

## LAW AND ARGUMENT

19. First, the Contract Sums are not property of the estate within the meaning of 11 U.S.C. § 541 because the Debtor has failed to complete the AWC Subcontract (under which it was terminated pre-petition) and has failed to pay its subcontractors and suppliers for labor and materials provided in connection with the work. To the extent that

the Debtor has failed to complete the work and/or to pay subcontractors and suppliers, it has not earned the AWC Bonded Subcontract Funds.  *See Pearlman,* 371 U.S. at 135-36, 83 S.Ct. 232, 237 (1962) (recognizing surety's priority right to contract funds); *In re Modular Structures, Inc.*, 27 F.3d 72, 77 (3rd Cir. 1994); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320 (5th Cir. 1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820 (1968); *Capitol Indemnity Corp. v. Heidkamp*, 312 B.R. 437 (M.D. Fla. 2003).  Because the Debtor has failed to earn the AWC Bonded Subcontract Funds, and they are not property of the estate.

20. In *Pearlman*, the debtor (as here) failed to pay laborers and materialmen on a bonded project, and the surety paid those claims under its bond.  The bankruptcy trustee claimed that, despite the surety's payment of claims, the contract balances on the project were property of the estate.  The surety, on the other hand, claimed that it was entitled to payment of the contract balance to reimburse the surety for the amounts paid to laborers and materialmen.  In ruling in favor of the surety, the Court noted that:

> Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not part of the bankrupts property and do not vest in the trustee.  The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors.   So here if the surety at the time of adjudication was, as it claimed, either the outright legal or equitable owner of this fund, or had an equitable lien or prior right to it, this property interest of the surety never became part of the bankruptcy estate to be administered, liquidated, and distributed to the general creditors of the bankrupt.
> * * *

> And probably there are few doctrines better established then that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.

*Id.* The Court went on to review prior precedent and held as follows:

> We therefore hold in accord with the established legal principles stated above that the Government [the obligee] had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it. Consequently, since the surety in this case has paid out more than the amount of the existing fund, it has a right to all of it. *Id.* at 141-42.

21. Thus, under *Pearlman,* the Bonded Contract Funds are not property of the estate within the meaning of 11 U.S.C. § 541 to the extent that the Debtors have failed to pay laborers, subcontractors and/or suppliers for work performed on Bonded Contracts or have failed to complete their other obligations under Bonded Contracts. As noted by one appellate court:

> We conclude that, based upon the record currently available in the present case, Modular breached its contractual obligation to pay its subcontractors and was therefore not "owed" the monies held by the [Owner]. Under those circumstances, those funds are not properly considered part of the estate in bankruptcy and are not subject to the Bank's superpriority lien.

*Modular Structures,* 27 F.3d at 77.

22. It is well established that bonded contract funds are trust funds for payment of the costs of completing the work under the bonded contracts and payment of those

supplying labor and materials used in the prosecution of work under the bonded contracts, and that the surety (here GAIC) has a first priority right to the bonded contract funds that is superior to that of the Debtor, the Trustee (where applicable) or any other secured creditor under principles of legal and equitable subrogation.  *See Pearlman,* 371 U.S. at 135-36; *Transamerica,* 540 So. 2d at 113; *Federal Ins. Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Co. v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977);  *In re Cone Constructors, Inc.*, 265 B.R. 302, 308-309 (Bkrtcy. M.D. Fla. 2001).  Thus, GAIC has a priority interest in the Contract Sums as the subrogee of the obligees on and claimants under the Bonds.

23. As noted by the Supreme Court in *Pearlman,* "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. 132, 136-137 (1962).

24. In *Transamerica,* an action was brought to determine the priority between a bank, which provided loans to a contractor, and a surety, which issued payment and performance bonds on behalf of a contractor to earned but unpaid sums due from a contracting party to a contractor. 540 So. 2d at 114.  The Florida Supreme Court quashed the lower court's finding that a bank that provided loans to the contractor had a priority interest in the defaulted principal contractor's accounts receivable on a construction project, and held that, under the doctrine of equitable subrogation, the right of a surety to

bonded contract funds is superior to the interests of all concerned parties, including any assignment rights of a bank.  *Id.* at 116.

25.Additionally, the AWC Bonded Subcontract Funds, by virtue of the Trust Fund provisions of the Indemnity Agreement, are dedicated to the completion of and payment of claims on the Bonded Projects.  In fact, under Florida law, it is a criminal act to fail to use contract funds to pay valid subcontractor and supplier claims on the project. § 713.345, Florida Statutes.

26.Although the Bonded Contract Funds are not property of the estate as the Debtor was terminated under the AWC Subcontract pre-petition, and the Debtor has not paid subcontractors and suppliers on or completed all of its obligations under the AWC Subcontract, in an abundance of caution, GAIC requests that the Court modify the stay to permit GAIC to: (1) collect the AWC Bonded Subcontract Funds; and (2) utilize said AWC Bonded Subcontract Funds to reimburse GAIC for the costs of completing the AWC Subcontract and of paying the claims of subcontractors and suppliers providing labor and materials utilized in the performance of the work.

## **CONCLUSION**

The AWC Bonded Subcontract Sums are not property of the estate, and GAIC respectfully requests that the Court hold that the stay does not apply or lift the stay to allow GAIC to: (1) collect the AWC Bonded Subcontract Funds; and (2) utilize said AWC Bonded Subcontract Funds to reimburse GAIC for the costs of completing the

AWC Subcontract and of paying the claims of subcontractors and suppliers providing labor and materials utilized in the performance of the work.

                MILLS PASKERT DIVERS

                */s/ Alberta L. Adams*
                ALBERTA L. ADAMS
                Florida Bar No. 80063
                aadams@mpdlegal.com
                100 North Tampa St., Suite 3700
                Tampa, Florida 33602
                Telephone: (813) 229-3500
                Facsimile: (813) 229-3502
                *Attorneys for Great American Insurance Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 21, 2018, I electronically filed a true and correct copy of the foregoing Motion to Lift Stay with the Clerk of the United States Bankruptcy Court for the Southern District of Florida by using the CM/ECF system and I furnished a copy of the foregoing document(s) to the following parties in the manner of service indicated below.

                */s/ Alberta L. Adams*

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**

Philip J. Landau, Esq.
Andrew T. Jenkins, Esq.
Office of the US Trustee
Eric S. Pendergraft, Esq.

**Via first class United States Mail, postage prepaid, to:**

All parties listed on the attached mailing list

Debtor, Glasgow Equipment Service, Inc., Post Office Box 10087, West Palm Beach, Florida 33419

Debtor's Counsel, Philip J. Landau, Esq. and Eric S. Pendergraft, Esq., Shraiberg, Landau & Page, 2385 NW Executive Center Dr, #300, Boca Raton, FL  33431

Office of the US Trustee, 1515 N Flagler Dr, #801, West Palm Beach, FL  33401

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113C-9<br>Case 18-11712-PGH<br>Southern District of Florida<br>West Palm Beach<br>Tue Feb 20 11:12:46 EST 2018 | Bank of America, N.A.<br>c/o Bush Ross, P.A.<br>Attn: Andrew T. Jenkins, Esq.<br>Post Office Box 3913<br>Tampa, FL 33601-3913 | Glasgow Equipment Service, Inc.<br>PO Box 10087<br>West Palm Beach, FL 33419-0087 |
| Great American Insurance Company<br>c/o Alberta L Adams<br>100 N Tampa St #3700<br>Tampa, FL 33602-5835 | A-1 Industrial Supply, Inc.<br>1801 Hypoluxo Rd<br>Lantana, FL 33462-4064 | Aero Hardware and Supply<br>300 International Parkway<br>Sunrise, FL 33325-6240 |
| Aldrich Tool Rental Inc.<br>1601 N. Congress Ave<br>West Palm Beach, FL 33409-5152 | Amerigas Inc.<br>7171 Interpace Road<br>West Palm Beach, FL 33407-1023 | Archer Western Construction<br>2500 62nd Ave SE<br>Naples, FL 34117-2801 |
| Bank United Cardmember Service<br>PO Box 790408<br>St Louis, MO 63179-0408 | Bank of America<br>P O BOX 851001<br>Dallas, TX 75285-1001 | Bank of America<br>P.O. Box 660576<br>Dallas, TX 75266-0576 |
| Bank of America<br>PO BOX 15731<br>Wilmington, DE 19886-5731 | Bank of America<br>c/o Andrew T. Jenkins<br>Bush Ross, PA<br>1801 N. Highland Ave<br>Tampa, FL 33602-2656 | Bank of America Business Card<br>PO BOX 15796<br>Wilmington, DE 19886-5796 |
| Bank of America Leasing<br>PO Box 100918<br>Atlanta, GA 30384-0918 | Beach Environmental Exterminating, Inc.<br>5490 Dexter Way<br>West Palm Beach, FL 33407-2219 | Beyel Brothers Inc.<br>PO Box 236246<br>Cocoa, FL 32923-6246 |
| Broward County Tax Collector<br>115 S Andrews Ave, Room A-100<br>Ft Lauderdale, FL 33301-1888 | Business Card    BOA- 6075<br>Bank Of America<br>Wilmington, DE 19886-5710 | CNH Productivity Plus Account<br>Dept 93 - 5512600706<br>PO Box 78004<br>Phoenix, AZ 85062-8004 |
| Cheffy Passodomo P.A.<br>821 Fifth Avenue South<br>Naples, FL 34102-6640 | Citi Cards<br>PO Box 9001016<br>Louisville, KY 40290-1016 | Comcast Corporation<br>PO Box 105184<br>Atlanta, GA 30348-5184 |
| Crystal Springs LLC<br>PO Box 660579<br>Dallas, TX 75266-0579 | Cuna Mutual Retiremt Solutions<br>PO Box 1167<br>Great Bend, KS 67530-1167 | Florida Crystals Corp<br>21250 South US 27<br>South Bay, FL 33493-2305 |
| Florida Department of Revenue<br>P.O. Box 6668<br>Tallahassee, FL 32314-6668 | Florida Power & Light<br>General Mail Facility<br>Miami, FL 33188-0001 | Gary Thomas<br>c/o Touchstone Webb Realty Company<br>Attn: Kris Hustad<br>610 Clematis Street, #CU-5<br>West Palm Beach, FL 33401-5391 |

| | | |
|---|---|---|
| Grainger<br>DEPT 806112413<br>P O Box 419267<br>Kansas City, FL 64141-6267 | Great American Insurance Company<br>PO Box 2119<br>Cincinnati, OH 45201-2119 | Great American Insurance Company<br>c/o Alberta L. Adams<br>Mills Paskert Divers PA<br>100 N. Tampa Street, Suite 3700<br>Tampa, FL 33602-5835 |
| Home Depot Credit Services<br>Dept 32-2501400737<br>PO Box 78047<br>Phoenix, AZ 85062-8047 | Internal Revenue Service<br>Attn: Special Procedures<br>P.O. Box 34045<br>Stop 572<br>Jacksonville, FL 32202 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 |
| John W. Kennedy Company<br>P O BOX 14217<br>E Providence, RI 02914-0217 | LM Heavy Civil Construction<br>1100 Park Central Blvd, Suite 3800<br>Pompano Beach, FL 33064-2237 | Mako Hose & Rubber Co<br>8331 McCallister Way<br>West Palm Beach, FL 33411-3713 |
| Malika&Kravitz PA<br>1300 Sawgrass Corporate Parkway, Suite 1<br>Fort Lauderdale, FL 33323-2823 | Office of Attorney General<br>State of Florida<br>The Capitol PL-01<br>Tallahassee, FL 32399-1050 | Office of the US Trustee<br>51 S.W. 1st Ave.<br>Suite 1204<br>Miami, FL 33130-1614 |
| PEMCO-Petroleum Equipment<br>2185 W 76th St<br>Hialeah, FL 33016-1838 | Peter H. Ward<br>5194 El Claro W<br>West Palm Beach, FL 33415-2720 | Peter Ward<br>18310 River Oaks Drive<br>Jupiter, FL 33458-3329 |
| Petticoat - Schmitt Civil Contractors<br>6380 Philips Hwy<br>Jacksonville, FL 32216-6050 | Pirates Cove Marina<br>4307 SE Bayview St.<br>Stuart, FL 34997-6807 | Premium Assignment Corp.<br>3522 Thomasville Rd, #406<br>Tallahassee, FL 32309-3488 |
| Prestige Land & Law, PLLC<br>120 Butler Street<br>West Palm Beach, FL 33407-6107 | SEC Headquarters<br>100 F Street, NE<br>Washington, DC 20549-2001 | Sailfish Point<br>1648 SE Sailfish Point Blvd<br>Stuart, FL 34996-1998 |
| Securities and Exchange Commission<br>801 Brickell Ave., Suite 1800<br>Miami, FL 33131-4901 | Shell Oil Company<br>PO Box 78012<br>Phoenix, AZ 85062-8012 | Simplex Inc.<br>PO Box 7388<br>Springfield, IL 62791-7388 |
| Star to Star Communications<br>600 Tallevast Rd<br>Sarasota, FL 34243-3254 | The Sherwin Williams Co.<br>3915 S Dixie Hwy<br>West Palm Beach, FL 33405-2295 | US Attorney Southern District of Florida<br>500 South Australian Avenue<br>Suite 400<br>West Palm Beach, FL 33401-6235 |
| United Healthcare Insurance Co.<br>Dept. CH 10151<br>Palatine, IL 60055-0151 | United Rental Inc.<br>PO Box 100711<br>Atlanta, GA 30384-0711 | United States Attorney General's Office<br>US Department of Justice<br>950 Pennsylvania Avenue<br>Washington, DC 20530-0001 |

| | | |
|---|---|---|
| Wells Fargo Financial Services<br>PO Box 74050<br>Atlanta, GA 30374-0540 | Wells Fargo Vendor Financial<br>Services, LLC<br>PO Box 740540<br>Atlanta, GA 30374-0540 | Westbrooke Corp<br>PO Box 810608<br>Boca Raton, FL 33481-0608 |
| Westrec Companies<br>251 Calming Water Trail<br>Dallas, GA 30132-1161 | Your IT Group (Core Vusion LLC<br>5030 Champion Blvd<br>Suite G11-165<br>Boca Raton, FL 33496-2473 | Eric S Pendergraft<br>Shraiberg, Landau & Page, P.A.<br>2385 N.W. Executive Center Drive<br>Suite 300<br>Boca Raton, FL 33431-8530 |
| Philip J Landau<br>2385 N.W. Executive Center Dr # 300<br>Boca Raton, FL 33431-8530 | | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)West Palm Beach

End of Label Matrix
Mailable recipients    66
Bypassed recipients     1
Total                  67